IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MICHAEL DEMAGALSKI,        )
                                       )
              Plaintiff,         )      Case No. 04-1051-KI
                                       )
    vs.                              )      OPINION
                                       )
COMMISSIONER of Social Security,  )
                                     )
             Defendant.       )

David B. Lowry
9900 S. W. Greenburg Road
Columbia Business Center, Suite 235
Portland, Oregon 97223

      Attorney for Plaintiff

Karin J. Immergut
United States Attorney
Craig J. Casey
Assistant United States Attorney
1000 S. W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

Lucille G. Meis
Social Security Administration
Office of the General Counsel
701 Fifth Avenue
Suite 2900, M/S 901
Seattle, Washington 98104-7075

    Attorneys for Defendant

KING, Judge:

## INTRODUCTION

Plaintiff Michael Demagalski brings this action for judicial review of a final decision of the Commissioner of Social Security denying his application for supplemental security income benefits (SSI) under Title XVI of the Social Security Act. The court has jurisdiction under 42 USC §§ 405(g) and 1383(c)(3). The Commissioner's decision is remanded.

## BACKGROUND

Demagalski alleges disability since August 16, 1990, due to pain in his back and right shoulder, his right arm, both wrists, his left thumb, and his left knee.

Demagalski was born in 1954, and he was 49 years old on the date of the Commissioner's final decision. He completed high school and has no past relevant work.

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 USC § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled within the meaning of the Act. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 CFR § 416.920. The first three steps of the process are not disputed in this case.

If the adjudication proceeds beyond step three, the Commissioner must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by his impairments. 20 CFR § 416.920(e), 416.945; Social Security Ruling (SSR) 96-8p.

At step four the Commissioner will find the claimant not disabled if he retains the RFC to perform work he has done in the past. 20 CFR § 416.920(f).

If the adjudication reaches step five, the Commissioner must determine whether the claimant can perform other work that exists in the national economy. Yuckert, 482 U.S. at 142; 20 CFR § 416.920(g). Here the burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can do. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). If the Commissioner meets this burden, then the claimant is not disabled. 20 CFR § 416.966.

## THE ALJ's FINDINGS

In the undisputed first three steps, the ALJ found that Demagalski: (1) has not engaged in substantial gainful activity since his alleged disability onset date; (2) suffers from impairments that are severe within the meaning of the Act, which the ALJ identified as failed intercarpal right

wrist fusion with arthritis, lumbar degenerative disc disease, and drug dependence in sustained partial remission; and (3) has a combination of impairments that do not satisfy the criteria for any presumptively disabling condition enumerated in the regulatory Listing of Impairments.

The ALJ assessed Demagalski with the RFC to carry fifty pounds frequently and twenty-five pounds occasionally[1] and can sit, stand, and walk for up to six hours in an eight hour day, with limitation on his ability to push, pull, climb, balance, crawl, and engage in gross manipulation (handling).

At step four, the ALJ found that Demagalski could not return to past relevant work. At step five, the ALJ found that Demagalski retained the RFC to perform a significant range of light work in the national economy. He identified examples of such work drawn from the testimony of an impartial vocational expert (VE), including telephone solicitor, ticket seller, and order clerk. Accordingly, the ALJ concluded that Demagalski is not disabled and not entitled to SSI benefits under Title XVI of the Act.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 USC § 405(g); <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Id.</u>

---

[1] Referring to Dr. Nye's evaluation, it appears the ALJ intended to form an RFC for Demagalski that limited him to lifting and carrying twenty-five pounds frequently and fifty pounds occasionally. Tr. 351. The VE's testimony was based on his review of Dr. Nye's evaluation with these limitations.

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

Demagalski challenges the ALJ's evaluation of the evidence in support of the RFC assessment. He contends the ALJ failed to properly credit his subjective statements about the severity of his symptoms. He contends the ALJ ignored the "disability opinion" of Dr. Nye, and improperly rejected the opinions of Drs. Tsang and Rendleman.

Demagalski also challenges the ALJ's conclusion at step five claiming that the ALJ improperly formed the hypothetical question he posed to the VE, improperly considered semi-skilled occupations without determining that he possesses transferrable skills, and relied on erroneous evidence about the number of jobs available in the regional and national levels of the economy.

I. **Evaluation of the Evidence**

   A. **Credibility Determination**

Demagalski argues that the ALJ failed to evaluate the proper factors and state clear and convincing reasons for discrediting his testimony. As a consequence, he asserts that the court must credit the testimony as true.

At the hearing, Demagalski related the onset of his disability to surgery on his right wrist in 1989, after which he underwent an additional 12 surgeries on his right wrist and two on his left wrist. He testified that he would average one surgery a year and would then be unable to work for the following 6 to 9 months. He testified that his right wrist is fused so picking up things causes it to swell and become painful for a few days, and then he is able to use the wrist again for a day or two. The mobility of his left wrist and thumb is limited. He is able to lift and carry a gallon of milk 25 feet on a good day, but 3 to 4 days a month he is not able to pick it up due to pain. His arms swell and become painful at least once a month for four to five days at a time. The pain and swelling develop if he uses a garden shovel or a gas powered weed eater for two hours.

Demagalski also testified that he had surgery on his right shoulder ten years ago, but that he still has problems with it and is unable to raise his arm above his chest. He also experiences back pain, which developed after he was clipped by a car while standing. He takes medication for the back pain.

Demagalski complained about his sore left knee at the hearing. He had surgery on his left knee approximately eight years ago. He has muscle spasms and cramps in his legs at night.

Demagalski takes one hour naps two to three times a week, and rests most of the day "sitting on the couch watching TV." Tr. 453. His girlfriend and mother do his shopping and laundry. About 20 days of every 30 (his good days), he can make four to five trips to the grocery store and walk 20 blocks. On bad days, he can walk a block, is unable to go to the grocery store at all, and can only be on his feet for 15 minutes without a break. Three to four nights a month, plaintiff lies flat on the floor due to pain in his legs and back. He reports that on good days he

experiences pain at a level of three out of ten, and about a third of the month he experiences pain at a level of eight, nine or ten.

In his brief to the court, Demagalski appears to take issue only with the ALJ's discrediting of statements about the level of pain he experiences. He does not point to any other conclusions about his credibility that he challenges. Nor does Demagalski identify in his briefing any limitations in specific work-related activities that would result from the ailments he alleges.

If a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the symptoms alleged and no affirmative evidence of malingering exists, the ALJ must assess the credibility of the claimant regarding the severity of symptoms. Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996); Cotton v. Bowen, 799 F.2d 1403, 1407-08 (9th Cir. 1986).

The ALJ may discredit a claimant's testimony regarding the severity of those symptoms by providing clear and convincing reasons for doing so. Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Smolen, 80 F.3d at 1284. It is not sufficient for the ALJ to make a general assertion that a claimant is not credible. The ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill, 12 F.3d at 918; Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995); Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

When making a credibility evaluation, the ALJ may consider objective medical evidence and the claimant's treatment history as well as any unexplained failure to seek treatment or follow a prescribed course of treatment. Smolen, 80 F.3d at 1284. The ALJ may also consider the claimant's daily activities, work record and the observations of physicians and third parties in a position to have personal knowledge about the claimant's functional limitations. Id. In

addition, the ALJ may employ ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms and other statements by the claimant that appear to be less than candid. Id.

Demagalski does not challenge the ALJ's rejection of Demagalski's testimony about knee and shoulder pain. Indeed, the ALJ articulated adequate reasons, pointing to applicable medical evaluations, to conclude that Demagalski's testimony about his subjective complaints of left knee and right shoulder pain were not convincing or entirely credible.

However, Demagalski points to the nonexamining State agency physician's recording of Dr. Berselli's opinion that the pain experienced by Demagalski in his right wrist and lower back "is consistent with objective findings" (Tr. 438) and argues that this medical evidence supports Demagalski's complaints about pain. I am unable to locate Dr. Berselli's opinion in which he makes this remark, only the nonexamining physician's report of this statement. Furthermore, Dr. Berselli opined that Demagalski was capable of lifting a maximum of 50 pounds occasionally and 25 pounds frequently, and the VE specifically considered this medical source statement in his testimony. Tr. 329, 470. Other medical opinions also indicated that Demagalski has the RFC to work, including his treating physician, Dr. Nye. The ALJ relied on objective medical findings in determining that Demagalski's allegations were not supported by the evidence.

The ALJ also considered Demagalski's daily activities, noting that he helps his children get up and off to school, occasionally plays cards for up to two hours, goes fishing in the summer, drives a car, rides a bicycle, takes walks, helps cook meals and clean the house, takes out trash, mows the lawn with a riding lawnmower, and handles his own bills. In addition,

Demagalski works on stained glass projects, makes picture frames in a wood shop, and works on automobiles.

Demagalski correctly states that a person need not be utterly incapacitated to be eligible for benefits. However, within appropriate limits, the ability to engage in ordinary household activities and personal tasks requiring exertion consistent with a wide range of work supports the conclusion that the claimant's symptoms do not prevent him from working. Fair v. Bowen, 885 F.2d at 605. Demagalski cites Stone v. Heckler, in which the ALJ erred in his determination that the claimant could do the necessary walking and standing associated with sedentary work when the ALJ relied on the claimant's testimony about duck hunting seated behind a blind. 761 F.2d 530, 532 (9th Cir. 1985). The ALJ had not confirmed how often this activity took place, or the amount of standing and walking required to do the activity, despite overwhelming medical evidence that the claimant could not use his lower extremities. In contrast, my review of the record does not suggest that the ALJ relied on the daily activities of Demagalski in the face of contrasting medical evidence. To the contrary, Demagalski's treating physician, Dr. Nye, opined that Demagalski was capable of fine manipulation frequently and gross manipulation occasionally.

Similarly, Demagalski relies on Tackett v. Apfel, in which the ALJ relied on a road trip as evidence that the claimant could sit for eight hours a day, and not on any physician opinions. 180 F.3d 1094, 1103 (9th Cir. 1999). Here, however, the ALJ did not rely on Demagalski's daily activities standing alone, but considered the record as a whole and concluded that the weight of the evidence did not support Demagalski's complaints of disabling symptoms.

Demagalski questions the source for the ALJ's finding that Demagalski engages in many activities that discredit his allegations regarding his inability to work. The ALJ does not cite to the record, but he apparently relied in part on a check-box form completed by plaintiff's mother. Tr. 144-7. The ALJ is required to consider the observations of family members. Smolen, 80 F.3d at 1288. In addition, I note that there is other evidence in the record that the ALJ may have considered. For example, Demagalski provided information about being able to push a vacuum cleaner some days (Tr. 457), driving several times a day (Tr. 465, Tr. 171), making his bed every day (Tr. 171), and grocery shopping weekly (Tr. 171). The pain and swelling develop in his arms only if he uses a garden shovel or a gas powered weed eater for two hours (Tr. 447), which are activities not required by the light work the ALJ found Demagalski capable of performing.

Finally, Demagalski argues that the ALJ should have considered his work history, because a lengthy work record supports crediting his statements. Nunn v. Heckler, 732 F.2d 645, 648 (8th Cir. 1984) (consistent work record considered in credibility determination). Here, however, Demagalski has not worked for over twelve years, during which time he was receiving Worker's Compensation benefits. His benefits stopped in November 2000 when he was deemed "medically stationary," Tr. 366, and he has not worked since then.

In summary, the ALJ provided a substantial evidentiary basis to support legally sufficient reasons for his conclusion that Demagalski's description of his symptoms was not entirely credible.

### B.     Medical Evidence

Demagalski contends the ALJ ignored Dr. Nye's "disability opinion" and improperly discredited the opinions of Drs. Rendleman and Tsang.

On February 23, 2001, Dr. Nye completed an RFC Report intended to describe Demagalski's abilities in work-related activities. Tr.351-352. He diagnosed post-fusion right wrist. He opined that Demagalski would be capable of jobs requiring low physical activity, but would not be able to perform extreme or demanding physical activity. Dr. Nye estimated Demagalski's limitations in exertional and postural activities. The ALJ adopted all of these findings.

The ALJ, according to Demagalski, erred in failing to account for Dr. Nye's report that "the date of disability onset" was "3/6/00." Tr. 352. Demagalski argues that this notation indicates that Dr. Nye considered him to be disabled. However, the functional capacity as found by Dr. Nye is not consistent with the definition of disability as defined by the Social Security regulations. 20 C.F.R. § 416.905. The court finds no error in this evaluation of the evidence.

Furthermore, although Demagalski chides the ALJ for failing to obtain from Dr. Nye clarification of this notation in the report, there was no need to do so. Dr. Nye completed a report not four months later, opining that it was not reasonable to expect that Demagalski would experience substantial difficulty with pain when working full time, eight hours a day at a sedentary job. Tr. 425.

As for the opinions of Drs. Rendleman and Tsang, the weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. Lester, 81 F.3d at 830. More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. Id.; Smolen, 80 F.3d at 1285. If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing

reasons. Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830.

A physician's opinion of disability "premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999) (internal quotation omitted).

Demagalski complains that the ALJ failed to give sufficiently specific reasons for rejecting the opinions of Drs. Rendleman and Tsang. The ALJ rejected their opinions as not "well supported by medically acceptable clinical and/or laboratory diagnostic studies and are inconsistent with other substantial evidence in the case record." Tr. 19.

On May 1, 2001, Dr. Rendelman performed an "administrative" examination and signed off on an RFC report completed by his nurse. After only a basic examination, he found that Demagalski was limited to walking for two hours out of an eight hour day, must alternate sitting and standing, could never handle or finger items, and had several environmental limitations. Dr. Rendelman performed no testing and based his opinion almost entirely on the subjective complaints of Demagalski. Given that Dr. Nye had been Demagalski's principal treating physician for over ten years, the ALJ properly afforded more weight to Dr. Nye's opinion than to the more limiting opinion of Dr. Rendleman. The ALJ's reasoning is particularly legitimate since Dr. Rendleman's opinion was based heavily on Demagalski's complaints about the severity of his symptoms, which, as explained above, the ALJ properly discounted. The ALJ provided

specific and legitimate reasons supported by substantial evidence in the record for rejecting Dr. Rendelman's opinion.

On February 11, 2002, Dr. Tsang performed a consultative medical examination on Demagalski, finding that he had a low grip and pinch strength in his left hand due to the injured thumb, could not use his hands effectively, could lift a maximum of twenty-five pounds, could sit without limit but could stand for only thirty minutes at a time. Dr. Tsang's opinion was very different from the opinion of Demagalski's treating physician, Dr. Nye, and from reports about Demagalski's daily activities, and the ALJ rejected it for these reasons. Accordingly, the ALJ provided specific and legitimate reasons supported by substantial evidence in the record for rejecting Dr. Tsang's opinion.

## II. Step Five Determination

In step five, the Commissioner must show that the claimant can do other work which exists in the national economy. Andrews v. Shalala, 53 F.3d at 1043. The Commissioner can satisfy this burden by eliciting the testimony of a vocational expert with a hypothetical question that sets forth all the limitations of the claimant. Id. The assumptions in the hypothetical question must be supported by substantial evidence. Id.

Demagalski challenges the ALJ's step-five determination on several grounds. First, Demagalski disputes the hypothetical question used by the ALJ to elicit testimony from the VE. Second, Demagalski argues that the ALJ improperly determined that Demagalski could perform semi-skilled jobs when there is no evidence that he possesses transferable skills. Finally, Demagalski contends the VE's testimony about the number of jobs available in the national economy lacked an adequate foundation. Demagalski asserts that the ALJ ignored

documentation showing that the Department of Labor, the Oregon Employment Department, and the Department of Commerce do not publish estimates of the number of jobs available in each occupation code listed in the Dictionary of Occupational Titles.

### A. **Hypothetical Question**

Demaglaski contends the VE's testimony was based on a hypothetical question that did not reflect all of his limitations. Demagalski argues that his RFC should have included a limitation for inability to work on a regular and continuing basis due to pain, the need to take naps and rest during the day, and the need to be absent for six months at a time for operations, and his reduced pace. In assessing Demagalski's RFC, the ALJ considered the whole record, weighing the medical evidence and Demagalski's testimony, and determined that Demagalski was capable of working an eight hour day. Because the ALJ's properly determined that Demagalski's description of his symptoms was not entirely credible, and because he relied on medical source statements opining that Demagalski was capable of working an eight hour day, the ALJ's RFC accommodated all of Demagalski's limitations.

He argues that the hypothetical question should have included the limitations proposed in the opinions of Drs. Rendleman and Tsang. However, the ALJ considered all the evidence and posed his vocational hypothetical question based on the limitations supported by the record as a whole. Because the ALJ properly rejected the opinions of Drs. Rendleman and Tsang, it was not error for him to exclude them from his hypothetical question. Magallanes v. Bowen, 881 F.2d 747, 757 (9th Cir. 1989).

Demagalski also asserts that the ALJ failed to adequately provide the basis for his conclusion about Demagalski's RFC. It is apparent that the ALJ relied on the RFC of Dr. Nye.

After the ALJ's conclusion about Demagalski's RFC, he cites to the two exhibits containing Dr. Nye's RFC Report. The ALJ explained in the previous paragraphs of his decision that he found Dr. Nye's opinions to be well-supported by medically acceptable clinical and/or laboratory diagnostic studies, and not inconsistent with other substantial evidence in the case record.

Accordingly, the ALJ's RFC formation was supported by substantial evidence in the record.

B. **Semi-Skilled Work**

Demagalski argues that there is no evidence he possesses the transferable skills necessary to perform two of the jobs–telephone solicitor and order clerk–that the VE identified as work the plaintiff could perform. The Commissioner admits that the VE never testified that plaintiff had specific transferable skills to the jobs identified. The ALJ's opinion is confusing on this point.[2] The Commissioner admits these jobs must be eliminated. This leaves the job of ticket seller, of which there are 650 jobs locally and 70,000 in the national economy. The Commissioner asserts that there are adequate numbers of ticket seller jobs available to support the result reached by the ALJ.

I cannot find that the ALJ's decision was supported by substantial evidence when the ALJ's conclusion was based upon the VE's testimony that there were three different types of jobs available, not just the one unskilled ticket seller occupation. I am not able to affirm the ALJ's decision on a ground that the agency did not decide. See Securities and Exchange Comm'n v.

---

[2] The ALJ's opinion asserts, "I have determined that the claimant has no skills that would transfer within the ambit of his residual functional capacity." Tr. 19. The ALJ's findings provide, "The claimant has transferable skills from skilled work previously performed as described in the body of the decision." Tr. 21.

Page 15 - OPINION

Chenery Corp., 332 U.S. 194, 196 (1947). Accordingly, I remand for the ALJ to provide his conclusion about whether the single occupation of ticket seller offers a significant number of jobs in the national economy that Demagalski can do.[3]

### C. Foundation Arguments

The VE identified three occupations that a person with Demagalski's RFC would be able to perform. As explained above, however, the Commissioner concedes that only one occupation is available to Demagalski given his work history and RFC. The VE estimated how many jobs exist in the local region and in the national economy for the applicable occupation, and the ALJ relied on the VE's opinion.

Demagalski contends this testimony lacked foundation and should be disregarded under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 598 (1993). In *Daubert*, the Supreme Court ruled on the prerequisites for admissibility in federal trials of purported scientific evidence under Rule 702 of the Federal Rules of Evidence. Id. Under Rule 702, a trial judge must ensure that a purported expert's opinion rests on a reliable foundation and is relevant. Id. Demagalski contends the VE's testimony regarding the number of jobs in each occupation is inadmissible because the ALJ did not ensure that it was based on a reliable foundation.

---

[3]Contrary to Demagalski's assertions, an ALJ could find that a single occupation satisfies the Commissioner's burden under step five of the analysis. See 20 CFR § 404.1566(b) ("Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications. Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered 'work which exists in the national economy.'")

Page 16 - OPINION

However, Daubert has no application in the context of administrative hearings before an ALJ. An ALJ may receive evidence at such hearings even though the evidence would not be admissible in court under the rules of evidence used by the court. 20 CFR § 416.1450(c).

Demagalski submitted letters from the US Department of Labor Bureau of Labor Statistics, the Oregon Employment Department, and the United States Department of Commerce Economics and Statistics Administration U.S. Census Bureau. Tr. 221-27. Each agency indicated that it does not publish data on the number of jobs estimated or projected in the economy by DOT code. However, the letters do not purport to establish that a VE would be unable to estimate those numbers with reasonable accuracy based on other published sources, education, experience or the other bases of the VE's expertise.

Demagalski had the opportunity to challenge the VE's qualifications and to explore the basis of his opinion during the hearing. He chose not to ask the VE to describe the sources he consulted in estimating the number of jobs existing in each occupation he identified. This is not an error that can be attributed to the ALJ.

///

///

///

## CONCLUSION

The decision of the Commissioner is reversed and this action is remanded to the Commissioner under sentence four of U.S.C. § 405(g) for rehearing consistent with this opinion to determine whether there are a significant number of jobs that Demagalski can perform.

DATED this ___1st___ day of ___June___, 2005.

                                        /s/ Garr M. King
                                        Garr M. King
                                          United States District Judge